IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Gladys Alcazar-Anselmo,**<br><br>      **Plaintiff,**<br>  v.<br><br>**City of Chicago,** *et al.*<br><br>      **Defendants.** | Case No. 07-CV-05246<br><br>Judge Harry D. Leinenweber |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

  Defendant, City of Chicago ("City"), by and through its attorneys, Pugh, Jones, Johnson & Quandt, P.C., and pursuant to Federal Rule of Civil Procedure 50(a), hereby moves this Court to enter judgment as a matter of law for the City. In support of this Motion, the City states as follows:

**Introduction**

  Based on the evidence that Plaintiff has produced, no reasonable jury could find in her favor on her Family Medical Leave Act of 1993 ("FMLA") interference claim or retaliation claim. As to her interference claim, no reasonable jury could find in her favor for two reasons. First, Plaintiff has not produced evidence showing that she was denied a substantive right under the FMLA. The fact that the City had not yet considered Plaintiff's leave request by the time she was terminated did not impede the exercise of any of Plaintiff's rights under the FMLA or damage Plaintiff. The City had ample time to grant her request before her leave was to take place. Second, Plaintiff has not produced evidence showing that she was entitled to take leave under the FMLA, namely that her excess skin was a "serious health condition" under the applicable federal regulations. Plaintiff has not produced any evidence that her excess skin impaired her at work or rendered her unable to perform daily activities. This absence of

evidence, demonstrating a serious health condition, likewise dooms Plaintiff's retaliation claim, because she has not shown that she was engaged in statutorily protected activity.

## Argument

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed R. Civ. P. 50(a); *Murray v. Chicago Transit Authority*, 252 F.3d 880, 887 (7th Cir. 2001). The evidence must be viewed in the light most favorable to the non-moving party. *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000).

### A. No Reasonable Jury Could Conclude that Plaintiff Has Proven Her Interference Claim.

Section 2615(a)(1) of the FMLA makes it "unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any *right* provided" under the Act. 29 U.S.C. § 2615(a)(1) (emphasis added). In order to establish an FMLA interference claim, a plaintiff must show that: (1) she was eligible for FMLA protection: (2) her employer was covered by the FMLA: (3) she was entitled to FMLA leave: (4) she provided sufficient notice of her intent to take leave: and (5) her employer denied her benefits to which she was entitled. *See Smith v. Hope School,* 560 F.3d 694, 699 (7th Cir. 2009); *Burnett v. LFW,* 472 F.3d 471, 477 (7th Cir. 2006). Here no reasonable jury could conclude that Plaintiff has established elements five and three: denial of a benefit and entitlement to leave.

#### 1. No Reasonable Jury Could Conclude that Plaintiff Was Denied a Benefit Under the FMLA Merely Because Commissioner Reyes Had Not Yet Considered Plaintiff's FMLA Leave Request By the Time She Was Terminated.

Plaintiff claims that the City violated the FMLA "by failing to make any decision regarding Plaintiff's request for FMLA leave." *See* Plaintiff's Proposed Jury Instructions Nos.

24, 30. The fact that the City had not yet made a decision on Plaintiff's FMLA leave request at the time she was terminated is, however, not a violation of the FMLA. As the Supreme Court has made clear, "[the FMLA] provides no relief unless the employee has been prejudiced by the violation." *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). *See also id.* at 91 (noting that "a showing of consequential harm" is fundamental to a FMLA cause of action). "Recovery under FMLA is 'unambiguously limited to actual monetary losses.'" *Coleman v. PEPCO*, 281 F. Supp. 2d 250, 254 (D.D.C. 2003) (quoting *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001)). In order to establish an interference claim, an employee must point to a substantive right under the FMLA and/or its regulations that was allegedly impeded by the employer's conduct. *See Rice v. Sunrise Express, Inc.,* 209 F.3d 1008, 1017-18 (7th Cir. 2000); *Brown v. Automotive Components Holdings, LLC,* 622 F.3d 685, 689 (7th Cir. 2010); *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 508 (3d Cir. 2009) ("[t]o succeed on an interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA.").

The fact that the City had not yet made a decision on Plaintiff's FMLA leave request at the time she was terminated simply did not impede the exercise of any of Plaintiff's FMLA rights. *Cf. Maclin v. SBC Ameritech,* 520 F.3d 781, 787 (7th Cir. 2008) (explaining that under Title VII an employment action must be significant and "involve more than a mere inconvenience" to support a claim). At the time that Plaintiff sought leave, there existed no statutory provision or regulation that granted her the right to have her request ruled upon within a certain time frame. Allowing an interference claim premised merely upon the City's delay in considering Plaintiff's leave request would permit any employee at any time to claim "interference" based solely on the fact that the employer did not act on the employee's request at

a time of the employee's choice, be it two days after the request, or several weeks. The FMLA recognizes interference that impedes the employee's right, nothing less. *See Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004) citing *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999) (under an interference claim, the question is "whether the employer in some manner impeded the employee's exercise of his or her right").

Tellingly, Plaintiff does not seek damages for a so-called delay in considering her FMLA leave request because, of course, she was not in fact damaged by the so-called delay. In *Roman v. Potter,* 604 F.3d 34 (1st Cir. 2010), the court rejected a similar claim to Plaintiff's, explaining that the employee's FMLA interference claim failed because it was premised upon a "delay in approving her [leave request]" that the employee could not show resulted in any damages to her. *Id.* at 43. The fact that Plaintiff here is not claiming damages as a result of the alleged delay in approving her leave request tellingly demonstrates that the alleged delay does not constitute interference.[1]

Moreover, as numerous circuits have concluded, including most recently the Eleventh Circuit, the right to commence FMLA leave is not absolute and an employer may dismiss an employee without allowing him or her to exercise FMLA rights if the employee would have been dismissed regardless of the request for FMLA leave:

> These circuits [the Eight, Tenth and Sixth] have reasoned that, as with the FMLA right to reinstatement, the FMLA right to non-interference with the commencement of leave is not absolute, and if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed, preventing her from exercising her right to leave or reinstatement. These circuits have concluded that an employee who requests FMLA leave has no greater protection against her employment being terminated for reasons unrelated to an

---

[1] The fact that Plaintiff is not seeking damages for the failure to make a decision on her FMLA leave request is especially pertinent here because Plaintiff has presented evidence to the jury that there was a delay in processing her exit paperwork from the City which, according to Plaintiff, resulted in her incurring medical costs in the absence of COBRA coverage. *See* Trial Tr. dated March 15, 2011, p.m. session at pp. 415-416. The potential confusion to the jury on these two separate issues is great.

4

> FMLA request than she did before submitting the request. This court has not previously decided whether the FMLA right to commence leave is absolute. Now, being presented directly with the issue, the court is persuaded by the reasoning of other circuits which have addressed this issue that the right to commence FMLA leave is not absolute, and that an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave.

*Krutzig v. Pulte Home Corp.,* 602 F.3d 1231, 1236 (11th Cir. 2010) (internal citations and quotations omitted) citing *Phillips v. Mathews*, 547 F.3d 905 (8th Cir.2008); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir.2004); *Arban v. West Publ'g Corp.,* 345 F.3d 390 (6th Cir.2003). *See also Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001) (explaining that an employer does not interfere with an employee's FMLA rights by refusing to reinstate an employee to a position that she never had a right to be reinstated to in the first place because she was terminated for other reasons).

### 2. No Reasonable Jury Could Conclude that Plaintiff Had a Serious Health Condition that Made Her Unable to Perform the Functions of Her Job.

In order to succeed on her interference claim, Plaintiff must prove that she was "entitled" to FMLA leave. *See Rice,* 209 F.3d at 1017. *See* Seventh Circuit Proposed FMLA Pattern Instruction No. 2; Plaintiff' Proposed Instruction No. 30. An employee may be entitled to FMLA leave, among other reasons not applicable here, "because of [1] a serious health condition that [2] makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *Smith v. Hope School,* 560 F.3d 694, 699 (7th Cir. 2009).

Plaintiff here claims that her excess skin amounted to a "serious health condition." As even Plaintiff's counsel has stated on the record, whether Plaintiff's excess skin meets this definition is a matter of law to be determined by this Court, not the jury. *See Haefling v. UPS, Inc.,* 169 F.3d 494, 499 (7th Cir.1999). *See* Hearing Tr. dated March 8, 2011 at p. 9.

5

Nonetheless, even were this question one that a jury should decide, no reasonable jury could find that Plaintiff has made this showing here.

### a. Plaintiff's skin-removal surgeries were elective, cosmetic procedures.

First, no reasonable jury could conclude that Plaintiff's skin-removal surgeries were anything other than elective, cosmetic procedures. The applicable regulations clearly provide that "[c]onditions for which cosmetic procedures are administered (such as treatments for acne or plastic surgery) are not 'serious health conditions' unless inpatient care is required or unless complications develop." 29 C.F.R. § 825.114(c). The only exception stated in the regulation is for plastic or restorative surgery after "an injury or removal of cancerous growths." *Id.*

Here, based on the evidence Plaintiff has introduced, no reasonable jury could conclude that her skin-removal surgeries were not merely elective, cosmetic procedures. Although it is true that Plaintiff's plastic surgeon testified generally that in *certain circumstances* removal of excess skin may be medically necessary, Plaintiff has not presented any evidence to support that *she herself* exhibited any of the symptoms rendering the surgery necessary. That is the showing required by the FMLA—a plaintiff may not demonstrate that her condition is FMLA qualifying merely by pointing to its distant potentialities if left untreated. *See Ames v. Home Depot, Inc.,* 629 F.3d 665, 669 (7th Cir. 2011) (fact that plaintiff's substance abuse escalated and she eventually checked herself into rehab was immaterial as to whether condition was serious at the time she was terminated); *Roberts v. Human Development Ass'n,* 4 F.Supp.2d 154, 162 (E.D.N.Y. 1998) ("While plaintiff was understandably startled by the sudden and unexpected onset of the symptoms she experienced, the Act does not appear to support the proposition that the potentiality of a serious health condition can transform what is actually a minor illness into a "serious health condition" within the meaning of the Act."); *Seidle v.*

*Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 246 (E.D.Pa. 1994) ("The physicians' opinions that otitis media is a "serious medical condition" are based largely on the *potential* dangers of otitis media, especially if left untreated. However, the FMLA and its implementing regulations defining "serious health condition" are not concerned with the *potential* dangers of an illness but only with the *present* state of that illness") (emphasis in original).[2]

As the evidence showed, on February 1, 2007, Plaintiff had her first visit with her plastic surgeon, Dr. John Polley, regarding pursuing removal of the excess skin. *See* Dep. Tr. of Dr. Polley dated September 11, 2008 ("2008 Polley Dep.") at p. 17:2-15.[3]; *see also* PX 138, Dr. Polley's Progress Notes. At no time prior to this first visit to Dr. Polley through her surgery did Plaintiff develop any skin infections, skin diseases, hernias, cuts or abrasions, or other medical conditions resulting from her excess skin. *See* 2008 Polley Dep. at. at p. 26:2-21. Nor did Plaintiff complain to her plastic surgeon, Dr. Polley, that she was experiencing pain as a result of her excess skin. *See* Dep. Tr. of Dr. Polley dated September 10, 2009 ("2009 Polley Dep.") at pp. 40:6-24, 41:1-6; *see also* DX 7, Medical History Form (Plaintiff checked the "no" box when asked whether she had been experiencing pain in the past six months). Then, because the skin removal surgery was not an emergent surgery, sometime after February 1, 2007, Plaintiff selected a surgery date of May 3, 2007 based on Dr. Polley's availability and her work schedule. *See* 2009 Polley Dep. at pp. 65:23-24; 66:1-13. Dr. Polley did not place any work restrictions on Plaintiff from the time of her first visit, February 1, 2007, through the date of the surgery, May 3,

---

[2] The City objected to any testimony by Plaintiff's treating physicians, who testified via deposition, that exceeded their observation, diagnosis and treatment because Plaintiff's treaters were not designated as experts under Federal Rule of Civil Procedure 26(a)(2). *See* Defendant's Motion *In Limine* No. 11. In its Motion *In Limine*, the City identified 21 deposition designations that should be barred on this basis. *See id.* This Court denied the City's objections to all 21 designations.

[3] Dr. Polley, Plaintiff's plastic surgeon, and Dr. Madura, Plaintiff's bariatric surgeon, both testified via deposition in Plaintiff's case-in-chief. All cites to their deposition testimony in this Motion were read to the jury.

2007. *See* 2009 Polley Dep. at p. 14:17-21.

**b. Plaintiff's excess skin was not a condition that required "continuing treatment."**

Even if a jury could conclude that Plaintiff's surgery was not cosmetic, she still cannot prove that it rose to a "serious health condition." A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition" that involves either "inpatient care" or "continuing treatment by a provider." *See* 29 CFR 825.114(a). *See* Seventh Circuit Proposed Pattern FMLA Instruction No. 5. Because Plaintiff's skin-removal surgery was an outpatient procedure, she must establish that her excess skin involved "continuing treatment by a provider" in order to prove that she had a "serious health condition" entitling her to FMLA leave. As relevant here, "continuing treatment" is defined one of two ways. First, pursuant to 29 CFR § 825.114(a)(2)(i), a plaintiff must show that her condition included:

> (i) A period of incapacity (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 CFR § 825.114(a)(2)(i). *See* Seventh Circuit Proposed Pattern FMLA Instruction No. 5. Or second, pursuant to 29 CFR 825.114(a)(2)(iii), a plaintiff must show that her condition included:

> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, etc.).

29 CFR § 825.114(a)(2)(iii). *See* Seventh Circuit Proposed Pattern FMLA Instruction No. 5. Thus, in order to prove that her excess skin was a serious health condition, Plaintiff must prove that it "incapacitated" her and subsequently required ongoing treatment by a physician. *See* 29 CFR § 825.114(a)(2) (i) and (iii); *Price v. City of Fort Wayne,* 117 F.3d 1022, 1024 (7th Cir. 1997); *Burnett v. LFW Inc.,* 472 F.3d 471, 478 (7th Cir. 2006).

Plaintiff has not introduced any evidence to show that her excess skin was incapacitating, *i.e.* that she was unable to work or perform other daily activities. Not one of the witnesses that Plaintiff presented testified that she ever appeared physically impaired at work or in anyway unable to perform at work because of her physical condition. In fact, Plaintiff's own secretary, Elizabeth Adolfie, who interacted with Plaintiff daily, was asked whether Plaintiff showed "any signs of physical difficulty" and answered "not that I noticed." *See* Trial Tr. dated March 14, 2011, p.m. session, at p. 125. Moreover, it is undisputed that Plaintiff took a three-week vacation to Italy a mere two months before she sought treatment from Dr. Polley for her excess skin. *See* DX 28 and 29. It is also undisputed that Plaintiff did not miss three consecutive days of work in 2007. *See* DX 18.

In addition, significantly, Dr. Polley stated on the FMLA Certificate of Healthcare Provider form, which he completed on Plaintiff's behalf, that Plaintiff's so-called "serious health condition" would not start until she was *recovering* from her May 3, 2007 outpatient procedure.

*See* 2008 Polley Dep. at p. 53:11-17; *see also* PX 127, FMLA Certificate of Healthcare Provider. Incapacity resulting from an elective procedure cannot, however, render an otherwise non-incapacitating condition, like Plaintiff's excess skin, into a "serious health condition." As the Seventh Circuit has explained, because "[Congress'] goal [in enacting the FMLA] was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events . . ." *Price,* 117 F.3d at 1023. It therefore follows that an employee is not "incapacitated" within the meaning of the FMLA merely because they must rest in order to recover from an elective procedure; instead, a plaintiff must establish that she had an underlying medical condition that rendered her incapacitated, in order to prove that she is entitled to FMLA leave. *See Burnett,* 472 F.3d at 478 (explaining that plaintiff's at-the-time undiagnosed prostate cancer was a serious health condition only because it resulted in episodic periods of incapacity); *Ames v. Home Depot U.S.A., Inc.,* 629 F.3d 665, 668-99 (7th Cir. 2011) (explaining that although substance abuse can qualify as serious condition under the FMLA, plaintiff's substance abuse was not a serious health condition because it did not affect her work); *Beard v. Hall Drive-Ins, Inc.,* 2005 WL 1705622 (N.D.Ind. 2005) (explaining that plaintiff must make a "threshold" showing that her arthritis resulted in a period of incapacity, which in turn required continuing treatment, not the other way around). *Cf. Price*, 117 F.3d at 1025 (plaintiff survived summary judgment on whether her multiple conditions together constituted a serious health condition because her physician testified "there was no way [the plaintiff] could perform her job, due to her mental and physical state, and . . . that to attempt to continue to work in her condition would be seriously detrimental to her health"); *Andonissamy v. Hewlett-Packard Co.*, 2007 WL 1597637, *9 -10 (N.D.Ill. 2007) (plaintiff's depression was not a serious health condition because he was able to perform his job throughout the time period

10

in question); *Rivero v. United Airlines, Inc.,* 2005 WL 3159244, *12 (N.D. Ill. 2005) (plaintiff's severe rash that did not keep him from working was not a serious health condition).

      **c. Plaintiff's skin-removal surgeries were not "continuing treatment" for her obesity.**

Finally, no reasonable jury could find that Plaintiff has proven that her skin-removal surgeries were continuing treatment for her obesity. Plaintiff has simply not presented evidence to connect the two. She saw her bariatric surgeon, Dr. James Madura, four times in 2006 and one time in 2007, for follow-up visits regarding her recovery from the gastric bypass surgery and her weight loss as a result of the surgery. *See* Dep. Tr. of Dr. Madura dated August 28, 2008 at pp. 23:1-24, 24:1-19, 25:4-19, 26:1-10. Plaintiff did not complain of any medical problems, except hair loss, during any of those follow-up visits. *See* Madura Dep. at pp. 23:18-24, 24:1-19, 25:4-19. Dr. Madura also did not refer Plaintiff to any plastic surgeon or other physician in 2006 or 2007. *See* Madura Dep. at pp. 23:18-24, 24:1-19, 25:4-24, 26:1-10.

In *Hurlbert v. St. Mary's Health Care System, Inc.,* 439 F.3d 1286 (11th Cir. 2006), the plaintiff suffered a heart attack and underwent angioplasty and a stent replacement in October 1999. *Id.* at 1289. Before the Plaintiff returned to work as a paramedic in November 1999, he was diagnosed with depression, anxiety, and sinusitis, and was prescribed Paxil for anxiety and stress. *Id.* In September 2002, the plaintiff requested thirty days of FMLA leave because of the "mental stress [he] was under and its impact on his health." *Id.* at 1292. The plaintiff gave his employer a note from his doctor which stated that he was under the doctor's "treatment and could return to work on October 9, 2002." *Id.* In response to the employer's motion for summary judgment, the plaintiff argued that he met the "requirements of § 825.114(a)(2)(i) because his October 1999 heart attack resulted in a period of incapacity exceeding three calendar days, and his subsequent treatment for anxiety 'related to' that condition and involved a regimen

11

of continuing treatment, *i.e.* a Paxil prescription." *Id.* at 1294. The Court of Appeals agreed with the district court's finding that the plaintiff's argument was "unpersuasive", in that it "tends to conflate his heart attack and his anxiety." *Id.* Therefore the court concluded that the plaintiff's treatment and period of incapacity for his anxiety did not relate to his heart attack for purposes of § 825.114(a)(2)(i). *Id.* at 1295-96. Plaintiff's evidence, likewise, does not demonstrate that her skin removal surgery was treatment for her obesity. Like the plaintiff in *Hurlbert,* Plaintiff has simply not presented evidence to connect the two.

For all these reasons, Judgment As A Matter Of Law should be granted in favor of the City on Plaintiff's interference claim.

**B. No Reasonable Jury Could Find that Plaintiff Has Proven Her Retaliation Claim.**

Plaintiff's failure to produce evidence demonstrating that she was entitled to FMLA leave because she had a "serious health condition" also dooms her retaliation claim. *See Smith v. Hope School,* 560 F.3d 694, 702 (7th Cir. 2009) (explaining that "[i]f [plaintiff's] request for leave was invalid . . . then [plaintiff] was not engaging in statutorily protected activity and thus could not have been fired for asserting her rights under the FMLA."); *Tayag v. Lahey Clinic Hosp., Inc.*, 677 F.Supp.2d 446, 453 (D.Mass. 2010) ("Here, Plaintiff asserts that she engaged in activities protected by the FMLA by requesting leave to "care for" her husband and then taking leave. As explained above, however, Plaintiff was not entitled to leave under the FMLA. Therefore, Plaintiff did not engage in a "statutorily protected activity," and her retaliation claim must fail."). Thus, Judgment As A Matter Of Law should be granted in favor of the City on Plaintiff's retaliation claim as well.

WHEREFORE, for all the reasons set forth above, Defendant, the City of Chicago, moves this Court to enter Judgment As A matter of Law in its favor pursuant to Federal Rule of Civil Procedure 50(a).

| | |
|---|---|
| Dated: March 16, 2011 | Respectfully submitted,<br>**The City of Chicago**<br><br>s/Preston L. Pugh<br>One of Its Attorneys |

Preston L. Pugh (ARDC No. 6243691)
Tiffany M. Ferguson (ARDC No. 6237051)
Jonathan B. Cifonelli (ARDC No. 6285930)
Rebecca D. Fuentes (ARDC No. 6289400)
Pugh, Jones, Johnson & Quandt, PC
180 North LaSalle Street, Suite 3400
Chicago, Illinois 60601
Telephone: 312-768-7800
Facsimile: 312-768-7801
Email: ppugh@pjjq.com
       tferguson@pjjq.com
       jcifonelli@pjjq.com
       rfuentes@pjjq.com

# CERTIFICATE OF SERVICE

      I, Preston L. Pugh, an attorney, certify that I shall cause to be served a copy of **Defendant's Motion for Judgment As A Matter of Law** upon the following individual(s), by deposit in the U.S. Mail box at 180 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, same-day personal delivery by messenger, FedEx overnight delivery, facsimile transmitted from (312) 768-7801, or Case Management/Electronic Case Filing System ("CM/ECF"), as indicated below on March 16, 2011.

                                                *Attorney for Plaintiff*

| | | |
|---|---|---|
| ☒ | CM/ECF | Arthur R. Ehrlich (Lead Attorney) |
| ☐ | Facsimile/___ Pages | Jonathan C. Goldman |
| ☐ | Federal Express | Goldman & Ehrlich |
| ☐ | U.S. Mail | 19 S. LaSalle Street, Suite 1500 |
| ☐ | Messenger | Chicago, IL 60603 |
| | | Phone: (312) 332-6733 |
| | | Fax: (312) 332-4629 |

                                        s/Preston L. Pugh
                                           Preston L. Pugh