IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Gladys Alcazar-Anselmo,** | |
| **Plaintiff,** | Case No. 07-CV-05246 |
| v. | Judge Harry D. Leinenweber |
| **City of Chicago,** *et al.* | |
| **Defendants.** | |

**DEFENDANT'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, A NEW TRIAL**

Defendant, City of Chicago ("City"), by and through its attorneys, Pugh, Jones, Johnson & Quandt, P.C., and pursuant to Federal Rules of Civil Procedure 50(b) and 59(a), hereby moves this Court to enter judgment as a matter of law for the City or, in the alternative, grant it a new trial. In support of this Motion, the City states as follows:

**Introduction**

On March 18, 2011, a jury entered a split verdict in this Family Medical Leave Act of 1993 ("FMLA") action. The jury found in favor of the City on Plaintiff's FMLA <u>interference</u> claim, in which she claimed that the City interfered with her rights under the FMLA by allegedly terminating her to avoid ruling on her leave request. The jury found in Plaintiff's favor on her FMLA <u>retaliation</u> claim, in which she claimed that the City violated the FMLA by terminating her because she requested FMLA leave.

Plaintiff, a former Deputy Commissioner in the City's Department of Consumer Services (now known as the Department of Business and Consumer Protection Services ("Department")), requested FMLA leave in March 2007 in order to have plastic surgery that May to remove excess skin from her arms and abdomen. On April 27, 2007, before Plaintiff's FMLA request was ruled

upon by the City, she was terminated.

Based on the evidence produced at trial, the City is entitled to judgment as a matter of law on Plaintiff's retaliation claim. Plaintiff did not produce evidence establishing that she was entitled to take leave under the FMLA, namely that her excess skin was a qualifying "serious health condition", under the applicable federal regulations. Plaintiff did not produce any evidence that her excess skin impaired her at work or rendered her unable to perform daily activities. Plaintiff also did not produce evidence demonstrating that she was at an appreciable risk for developing a serious condition due to her excess skin. At most, Plaintiff produced evidence that one day she might develop a need for the surgery, but that fell far short of what the law required. The absence of evidence demonstrating that Plaintiff was entitled to FMLA leave dooms her retaliation claim as a matter of law.[1]

In the alternative, this Court should order a new trial because the jury was erroneously instructed on Plaintiff's retaliation claim. The jury was instructed that Plaintiff's FMLA leave request need only be a motivating factor in the City's decision to terminate her despite the fact that this was not a mixed-motive case. Because this was not a mixed-motive case, the jury should have been instructed on "but for" causation. Furthermore, even if a mixed-motive instruction was appropriate (which it was not), allowing Plaintiff to omit a significant part of that instruction—namely, the employer's defense—was error. Seventh Circuit law is clear that a jury in a mixed-motive retaliation case should be instructed that the employer can avoid liability by proving that it would have made the same employment decision even if it had not taken plaintiff's protected activity into account. Failing to so instruct the jury and to use a corresponding verdict form that asked the jury (1) whether it found that the protected activity was a motivating factor in the employer's decision and (2) whether it found that the employer

---

[1] The City moved for Judgment as a Matter of Law under Rule 50(a) on this basis. *See* Dkt. No. 282.

would have terminated the plaintiff even if she had not engaged in protected activity, leaves the Court without a basis to determine whether compensatory damages, interest, liquidated damages and attorneys' fees should be awarded or not.

## Argument

**A. This Court Should Enter Judgment as a Matter of Law for the City Because No Trier of Fact Could Have Concluded that Plaintiff Proved Her Retaliation Claim.**

A court should render judgment as a matter of law under Rule 50(b) when, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could have found in her favor. *See Waters v. City of Chicago,* 580 F.3d 575, 580 (7th Cir. 2009). A party moving under Rule 50(b) may also raise for review legal errors made by the court in denying summary judgment. *See Chemetall GMBH v. ZR Energy, Inc.,* 320 F.3d 714, 719-20 (7th Cir. 2003).

To establish an FMLA retaliation claim, a plaintiff must present evidence (1) that she engaged in statutorily protected activity; (2) that a materially adverse action was taken by the employer; and (3) that a causal connection existed between the two. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011).

A plaintiff cannot prove she engaged in "statutorily protected activity" if she was not entitled under the FMLA to the leave that she requested. *See Smith v. Hope School,* 560 F.3d 694, 702 (7th Cir. 2009) ("[i]f [plaintiff's] request for leave was invalid . . . then [plaintiff] was not engaging in statutorily protected activity and thus could not have been fired for asserting her rights under the FMLA); *Ames v. Home Depot U.S.A., Inc.,* 2009 WL 4673859, *11 (N.D. Ill. 2009) (concluding that the plaintiff had failed to satisfy the "statutorily protected activity" element of her retaliation claim specifically because there was no evidence that the plaintiff had a serious health condition). *Accord Branham v. Gannett Satellite Information Network, Inc.,* 619

F.3d 563, 568 (6th Cir. 2010) ("To prevail on either her interference claim or her retaliation claim, [the plaintiff] must prove that she was entitled to FMLA leave."); *Schaar v. Lehigh Valley Health Services, Inc.*, 598 F.3d 156, 158 (3d Cir. 2010) (noting that *"[o]nce an employee is entitled to leave*, the FMLA prohibits an employer from interfering with it or retaliating against an employee for taking it", and thus explaining that the "crucial question" for both the plaintiff's interference and retaliation claims was whether the plaintiff had a serious health condition) (emphasis added); *Gorski v. Medical Protective Co.,* 2010 WL 4684023, *13 (N.D. Ind. 2010) ("[Plaintiff's] retaliation claim is a non-starter. As concluded *supra,* she has failed to establish that she has a "serious health condition", and thus she cannot establish the first element of her claim—that she engaged in statutorily protected activity.").

In sum, Plaintiff's retaliation claim fails as a matter of law if she was not entitled to FMLA leave due to a serious health condition. As demonstrated below, that is the case here.

> **1. Whether Plaintiff Had a Serious Health Condition Is a Question of Law Which the Court Must Decide, and In Any Event, No Reasonable Jury Could Have Concluded Based on the Record Evidence that Plaintiff Had a Serious Health Condition.**

An employee may be "entitled" to FMLA leave, among other reasons not applicable here, "because of [1] a serious health condition that [2] makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (D); *Smith,* 560 F.3d at 699. Plaintiff here claimed that her excess skin amounted to a "serious health condition".

The question of whether an employee had a serious health condition under the FMLA is a question of law. *Haefling v. UPS, Inc.,* 169 F.3d 494, 499 (7th Cir. 1999). *Accord Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591 (7th Cir. 2008). This question should have been conclusively decided by the Court. *See Taylor v. Autozoners, LLC*, 706 F.Supp.2d 843, 849 (W.D. Tenn. 2010); *Alston v. Sofa Express, Inc.,* 2007 WL 3071662, *8 (S.D. Ohio 2007). That

4

appears not to have happened.[2] In any event, even if this question was one that could have been sent to the jury, no reasonable jury could have found that Plaintiff made this showing based on the evidence produced at trial.

### 2. In Order to Qualify for FMLA Leave, Plaintiff Needed to First Show She Had a Serious Health Condition.

Plaintiff failed to prove that her skin removal surgeries were precipitated by a serious health condition. As the evidence showed, on February 1, 2007, Plaintiff had her first visit with her plastic surgeon, Dr. John Polley, regarding pursuing removal of the excess skin. *See* Trial Tr. of Plaintiff's Case-In-Chief, at p. 171:5-13, attached hereto as Exhibit A[3]. At no time prior to this first visit, or for that matter any time through the date of her skin removal surgery, did Plaintiff develop any skin infections, skin diseases, hernias, cuts or abrasions, or other medical conditions resulting from her excess skin. *See* Ex. A at p. 176:2-19. Nor did Plaintiff complain to her plastic surgeon, Dr. Polley, that she was experiencing pain as a result of her excess skin. *See* Ex. A at pp. 535:24-25—536:1-25; 537: 1-2; *see also* DX 7, Medical History Form (Plaintiff checked the "no" box when asked whether she had been experiencing pain in the past six months), attached hereto as Exhibit B. Because the skin removal surgery was not an emergent surgery, sometime after February 1, 2007, Plaintiff selected a surgery date of May 3, 2007 based on Dr. Polley's availability and her work schedule. *See* Ex. A at p. 540:10-19. Dr. Polley did not place any work restrictions on Plaintiff from the time of her first visit, February 1, 2007, through the date of the surgery, May 3, 2007. *See* Ex. A at p. 521:5-12.

---

[2] On the City's Rule 50(a) Motion for Judgment as a Matter of Law, the Court found there was evidence only that Plaintiff's skin removal surgeries were "going to have to occur at some point or another." *See* Ex A at p. 548:89-90. As the City has previously explained both in its summary judgment motion and its Rule 50(a) motion, and as explained *infra*, this is not the relevant inquiry for determining whether Plaintiff qualified for FMLA leave based on a serious health condition.

[3] Dr. Polley, Plaintiff's plastic surgeon, and Dr. Madura, Plaintiff's bariatric surgeon, both testified via deposition in Plaintiff's case-in-chief.

Although it is true that Plaintiff's plastic surgeon testified generally that in *certain circumstances* removal of excess skin may become medically necessary, Plaintiff did not present any evidence to support that *she herself* exhibited any of the symptoms rendering the surgery necessary *in her case* or even that she was at an appreciable risk to develop any of those symptoms. Moreover, whether Plaintiff's condition would have become a serious health condition was far from a foregone conclusion. Plaintiff's treating physicians never opined that all, or even the majority, of persons with excess skin will eventually develop conditions that might make skin-removal surgery necessary. Plaintiff's treating physicians did not even opine that it was "likely"—or offer any percentage of the likelihood—that Plaintiff would develop any of the symptoms that might, in certain cases, render skin-removal surgery medically necessary.[4] For these reasons, the jury was not presented with sufficient evidence to conclude that Plaintiff had a serious health condition.

The law is well-settled that a plaintiff may *not* demonstrate that her condition is FMLA-qualifying merely by pointing to distant potentialities if left untreated. *See Ames,* 629 F.3d at 669 (fact that plaintiff's substance abuse escalated and she eventually checked herself into rehab was immaterial as to whether condition was serious at the time she was terminated); *Roberts v. Human Development Ass'n,* 4 F.Supp.2d 154, 162 (E.D.N.Y. 1998) ("While plaintiff was understandably startled by the sudden and unexpected onset of the symptoms she experienced, the Act does not appear to support the proposition that the potentiality of a serious health condition can transform what is actually a minor illness into a "serious health condition" within

---

[4] The City objected to any testimony by Plaintiff's treating physicians, who testified via deposition, that exceeded their observation, diagnosis and treatment because Plaintiff's treaters were not designated as experts under Federal Rule of Civil Procedure 26(a)(2). *See* Defendant's Motion *In Limine* No. 11. In its Motion *In Limine*, the City identified 21 deposition designations that should be barred on this basis. *See id.* This Court denied the City's objections to all 21 designations. Nonetheless, even with the admission of this evidence, Plaintiff failed to present the evidence necessary to show that her excess skin would have become a serious health condition, as noted above.

the meaning of the Act."); *Seidle v. Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 246 (E.D. Pa. 1994) ("The physicians' opinions that otitis media is a "serious medical condition" are based largely on the *potential* dangers of otitis media, especially if left untreated. However, the FMLA and its implementing regulations defining "serious health condition" are not concerned with the *potential* dangers of an illness but only with the *present* state of that illness") (emphasis in original). It is for this reason that the Court's observation that Plaintiff's skin removal surgeries were "going to have to occur at some point or another" was not conclusive on whether Plaintiff had a serious health condition.

As one court has explained, in enacting the FMLA, Congress surely did not expect an employer to have to act as a medical professional and determine whether a seemingly minor condition like Plaintiff's excess skin might one day become more serious:

> The employer must be able to assess the situation as it is at the time leave is requested, and then by referring to the statute, determine whether or not leave is required. Therefore, the condition must be "serious" at the time when leave is taken or requested, and not at some future date. If this were not the case, employers would never be able to assess whether or not FMLA leave is mandated in a particular case. Any minor illness might later prove to be a symptom of a serious illness or disease, but if the question of whether or not FMLA leave is required is guided by hindsight, rather than how the condition is understood at the time leave is requested or taken, employers would be left with no guidance as to whether or not leave is required by the statute.

*Phillips v. Quebecor World RAI, Inc.,* 2005 WL 6126702, *6 (E.D.Wis. 2005).

### 3. Plaintiff's Excess Skin Was Not a Condition that Required "Continuing Treatment".

In addition to failing to show that she had a serious health condition that precipitated her FMLA leave, Plaintiff also failed to show that her condition was "an illness, injury, impairment, or physical or mental condition" that involves either "inpatient care" or "continuing treatment by

7

a provider." *See* 29 CFR § 825.114(a), a copy of which is attached hereto as Exhibit C[5]. *See* Seventh Circuit Proposed Pattern FMLA Instruction No. 5. Plaintiff conceded that her surgeries were not in-patient; thus, she was required to prove that her excess skin involved "continuing treatment by a provider." To do this, as explained in the City's summary judgment motion and at trial, Plaintiff had to show that her condition "incapacitated" her and subsequently required ongoing treatment by a physician. *See* 29 CFR § 825.114(a)(2) (i) and (iii); *Price v. City of Fort Wayne,* 117 F.3d 1022, 1024 (7th Cir. 1997); *Burnett v. LFW Inc.,* 472 F.3d 471, 478 (7th Cir. 2006).

Plaintiff did not introduce **_any_** evidence to show that her excess skin was incapacitating, *i.e.* that she was unable to work or perform other daily activities. 29 CFR § 825.114(a)(2)(i). Not one of the witnesses that Plaintiff presented testified that she ever appeared physically impaired at work or in any way unable to perform at work because of her physical condition. In fact, Plaintiff's own secretary, Elizabeth Adolfie, who interacted with Plaintiff daily, was asked whether Plaintiff showed "any signs of physical difficulty" and answered "not that I noticed." *See* Ex. A at pp. 125:23-25—126:1-6. Dr. Polley also testified that Plaintiff's ability to work was in no way limited prior to her skin-removal surgery. *See* Ex. A at p. 521:9-17. In addition, when, at her first visit to Dr. Polley, Plaintiff was asked on a Medical History Form whether she had been experiencing pain in the last six months, she answered "no." *See* Ex. B. It is also undisputed that Plaintiff took a three-week vacation to Italy a mere two months before she sought treatment from Dr. Polley for her excess skin. *See* DX 28 and 29, attached hereto as Exhibit D. Finally, it is undisputed that Plaintiff did not miss three consecutive days of work in 2007. *See* DX 18, attached hereto as Exhibit E.

---

[5] This is the regulation that governed the definitions of "serious health conditions" under the FMLA at the time Plaintiff requested leave, March of 2007, and at all other relevant periods throughout this case. This regulation was subsequently amended in January 2009.

Significantly, Dr. Polley stated on the FMLA Certificate of Healthcare Provider form, which he completed on Plaintiff's behalf, that Plaintiff's so-called "serious health condition" would not start *until she was recovering* from her May 3, 2007 outpatient procedure. *See* PX 127, FMLA Certificate of Healthcare Provider, attached hereto as Exhibit F; *see also* Ex. A at p. 192:15-20. Incapacity resulting from an elective procedure cannot, however, render an otherwise non-incapacitating condition, like Plaintiff's excess skin, into a "serious health condition." As the Seventh Circuit has explained, "[Congress'] goal [in enacting the FMLA] was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events . . ." *Price,* 117 F.3d at 1023. It therefore follows that an employee is not "incapacitated" within the meaning of the FMLA merely because they must rest in order to recover from an elective procedure; instead, a plaintiff must establish that she had an underlying medical condition that rendered her incapacitated, in order to prove that she is entitled to FMLA leave. *See Burnett,* 472 F.3d at 478 (explaining that plaintiff's at-the-time undiagnosed prostate cancer was a serious health condition only because it resulted in episodic periods of incapacity); *Ames,* 629 F.3d at 669 (explaining that although substance abuse can qualify as serious condition under the FMLA, plaintiff's substance abuse was not a serious health condition because it did not affect her work); *Beard v. Hall Drive-Ins, Inc.,* 2005 WL 1705622, *10 (N.D.Ind. 2005) (explaining that plaintiff must make a "threshold" showing that her arthritis resulted in a period of incapacity, which in turn required continuing treatment, not the other way around).

For all these reasons, judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) should be granted in favor of the City on Plaintiff's retaliation claim.

**B. Alternatively, this Court Should Grant a New Trial Because the Jury Was Erroneously Instructed On Plaintiff's Retaliation Claim.**

Under Rule 59(a), a court should grant a new trial based on erroneous jury instructions if the moving party shows both that the instructions did not adequately state the law and that the error(s) were prejudicial because the jury was likely to be confused or misled. *See Lasley v. Moss,* 500 F.3d 586, 589 (7th Cir. 2007); *Krippelz v. Ford Motor Co.,* ---F.Supp.2d---, 2010 WL 4457306, *3 (N.D.Ill. 2010). Here, the jury instructions on Plaintiff's retaliation claim misstated the law, and those errors greatly prejudiced the City.

The jury was instructed on Plaintiff's retaliation claim as follows:

> *In Count II of the complaint, Plaintiff Gladys Alcazar-Anselmo claims that the Defendant terminated Plaintiff's employment in retaliation for Plaintiff having engaged in FMLA protected activity. FMLA-protected activity includes, but is not limited to requesting or taking leave.*
>
> *To prevail in this claim, Plaintiff must prove by a preponderance of the evidence that:*
>
>     a.    *She engaged in FMLA-protected activity;*
>
>     b.    *Defendant terminated Plaintiff; and*
>
>     c.    *Defendant terminated Plaintiff because she engaged in FMLA-protected activity.*
>
> *Plaintiff does not have to prove that Plaintiff's FMLA-protected activity is the only reason Defendant terminated her.*
>
> *If you disbelieve the reasons Defendant has given for its decision, you may infer Defendant terminated Plaintiff because of her FMLA-protected activity.*
>
> *If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove this by a preponderance of the evidence as to Count II, then you must find for the Defendant on this count.*

*See* Exhibit G at p. 202-03. This instruction contains several prejudicial errors, each discussed below.

### 1. The Jury Should Not Have Been Instructed that Plaintiff Need Not Prove that Her FMLA-Protected Activity Was the "Only Reason" the City Terminated Her Because This Was Not A Mixed-Motive Case.

Although it is true that in certain circumstances a plaintiff may establish an FMLA retaliation claim by showing that her protected conduct was a substantial or motivating factor in her employer's decision, s*ee Goelzer v. Sheboygan County, Wis*., 604 F.3d 987, 995 (7th Cir. 2010), a jury should only be so instructed if that is in fact the theory of the plaintiff's case and she presents sufficiently direct evidence in support. The Committee on Pattern Civil Jury Instruction of the Seventh Circuit ("Seventh Circuit Committee") recommends that "motivating factor" instructions, like that used in this case—*"Plaintiff does not have to prove that Plaintiff's FMLA-protected activity is the only reason Defendant terminated her"*—should be given <u>only</u> in mixed-motive cases, not in all retaliation cases. *See* Seventh Circuit Pattern Jury Instruction 3.01, committee comment b ("The Committee drafted these instructions with the understanding that the "motivating factor" language is appropriate in mixed motive cases . . . . However, the Committee assumed the continuing viability of the ["but for"] approach in non-mixed motive cases in the Seventh Circuit").[6] In cases where the plaintiff does not advance evidence in support of a mixed-motive theory, the Seventh Circuit Committee recommends that the standard "but-for" instruction be used. *See id.*; Seventh Circuit Pattern Jury Instruction 3.02 ("but-for" Title VII retaliation instruction). The Second and Third Circuits have explicitly adopted this rule, explaining that a jury should be instructed as to "motivating factors" only if the Plaintiff presents evidence that an impermissible factor was a motivating factor in the employer's decision (*i.e.* "mixed motive cases"), but should be instructed on "but-for" causation if the Plaintiff attempts to prove retaliation merely by demonstrating that the employer's proffered

---

[6] Although the Seventh Circuit Committee makes these recommendations in the context of Title VII claims, the standard under the FMLA with respect to the "motivating factor/mixed-motive" issue mirrors the Title VII standards. *See, e.g. Goelzer,* 604 F.3d at 995 (citing to Title VII caseslaw).

11

reasons are pretextual (*i.e.* "pretext cases"). *See Watson v. Southeastern Pennsylvania Transportation Authority,* 207 F.3d 207, 214-20 (3d Cir. 2000); *Fields v. New York State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 121-24 (2d Cir. 1997).

Here, Plaintiff did not raise a mixed-motive theory or present any evidence in support of such a theory. Instead, Plaintiff attempted to raise the inference of retaliation by establishing that the City's proffered reasons for her termination were pretextual. Simply put, this was a classic pretext case, and thus it was error to give a "motivating factor" instruction. The Seventh Circuit's standard "but for" retaliation instruction, *see* Seventh Circuit Pattern Jury Instruction 3.02, which the City proposed, should have been given instead. *See* Dkt. No. 262 at Ex. 5, Def.'s Proposed Jury Ins. No. 32.

The "motivating factor" language in the Court's given instruction, which the City repeatedly objected to, *see* Dkt. Nos. 275 and 284, misled the jury into believing that Plaintiff's request for FMLA leave need not have been the only reason for her termination when, given Plaintiff's pretext theory, that is precisely what she needed to prove. The instruction must also have confused the jury given that Plaintiff had not introduced any evidence, nor argued, that the City here had mixed motives. Thus, this erroneous instruction prejudiced the City. *See Byrd v. Illinois Dept. of Public Health*, 423 F.3d 696, 705 (7th Cir. 2005) (explaining that an error in a jury instruction is prejudicial where the jury was likely misled and confused). The City would have prepared its defense differently had this been a mixed-motive case.

In addition, the particular motivating-factor language that the Seventh Circuit Committee recommends, where appropriate, differs from that used in this case. The Seventh Circuit recommends:

> Plaintiff must prove by a preponderance of the evidence that his [protected class] was a motivating factor in Defendant's decision to [adverse employment action] him. A motivating factor is something that contributed to Defendant's decision.

*See* Seventh Circuit Pattern Jury Instruction 3.01, committee comment b. The language used by the Court—that Plaintiff need not prove her "*FMLA-protected activity is the only reason Defendant terminated her*"—was less clear and misleading. It fails to explicitly require that Plaintiff's protected activity rise to the level of even a motivating factor. Even in a mixed-motive instruction, the activity must be a reason—albeit one of a multitude—that the adverse employment action was taken. The Court's instruction was prejudicial to the City for this reason as well.

### 2. Because A Motivating-Factor Instruction Was Given, the Jury Should Have Been Instructed on the Mixed-Motive Defense Available to Employers In Retaliation Cases.

The Court's given instruction failed to acknowledge the mixed-motive affirmative defense available to the City. In a retaliation claim, an employer may avail itself of a mixed-motive affirmative defense that is a <u>complete</u> bar to its liability and all compensatory damages and a bar to an award of attorneys' fees to the plaintiff. *See Speedy v. Rexnord Corp.,* 243 F.3d 397, 401-02 (7th Cir. 2001). As the Seventh Circuit has explained:

> In *Price Waterhouse v. Hopkins*, the Supreme Court established the "mixed-motive" affirmative defense when it held that "when a plaintiff in a Title VII case proves that her [protected conduct] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [protected conduct] into account." 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In response to the decision, Congress enacted the Civil Rights Act of 1991 "in part to overrule the Supreme Court's decision in *Price Waterhouse*." *McNutt v. Board of Trustees of the Univ. of Ill.,* 141 F.3d 706, 707 (7th Cir.1998). The Act rolled back the *Price Waterhouse* holding in certain types of discrimination cases by providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42

> U.S.C. § 2000e-2(m). **However, as we noted in *McNutt*, absent from that provision is a reference to retaliation claims. *See McNutt,* 141 F.3d at 707. Thus, we determined that within the limited context of retaliation cases, the rule of *Price Waterhouse* was still applicable, and a defendant could therefore continue to avoid liability by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken plaintiff's protected activity into account.**

*Id.* (emphasis added); *accord Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 963 (7th Cir. 2010). In other words, the Seventh Circuit has made it clear that in a retaliation case, an employer can avoid liability by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken plaintiff's protected activity into account. *See id.*

Thus, since this Court allowed a motivating-factor instruction in the first place, it should have been followed by an instruction as to the City's mixed-motive defense that read generally as follows:

> If you find that Plaintiff has proved that her [*protected activity*] contributed to Defendant's decision to [*adverse employment action*] her, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [*adverse employment action*] her even if Plaintiff had not [*protected activity*]. If so, you must enter a verdict for the Defendant.

*See generally* Seventh Circuit Pattern Jury Instruction 3.01, committee comment c; *see Speedy,* 243 F.3d at 401-02; *Serwatka,* 591 F.3d at 963; *Sawyer v. Nicholson,* 2010 WL 4510954, *19 (N.D.Ill. 2010) ("An employer accused of retaliating against an employee . . . may avoid liability by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken the plaintiff's protected activity into account."). The Court was clearly obligated to include this part of the instruction if it was going to use a mixed-motive instruction at all. *See Speedy,* 243 F.3d at 401-02; *Serwatka,* 591 F.3d at 963.

14

The failure to include this integral component of the mixed-motive instruction prejudiced the City because it robbed it of an affirmative defense to which it was entitled under the law and which, if successful, would have absolved it of **all** liability and barred an award of compensatory damages. *See Speedy,* 243 F.3d at 401-02; *Serwatka,* 591 F.3d at 963.

### 3. It Was Error to Give A "Permissive Pretext" Instruction.

As the Seventh Circuit has explained, the "permissive pretext" language in the Court's instruction—*"if you disbelieve the reasons Defendant has given for its decision, you may infer Defendant terminated Plaintiff because of her FMLA-protected activity"*—is misleading, unnecessary and should not be given. The court in *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994), made this clear:

> [plaintiff] also wanted the judge to instruct the jury about one permissible inference: that if it did not believe the employer's explanation for its decisions, it may infer that the employer is trying to cover up age discrimination. This is a correct statement of the law, but a judge need not deliver instructions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not an obligatory, inference. Many an inference is permissible. Rather than describing each, the judge may and usually should leave the subject to the argument of counsel.

The City therefore repeatedly objected to the inclusion of this language in the retaliation instruction. *See* Dkt. Nos. 275 and 284. This error prejudiced the City as well.

For all these reasons, the jury was erroneously instructed on Plaintiff's retaliation claim, and the Court should order a new trial.

**Conclusion**

WHEREFORE, for all the reasons set forth above, Defendant, the City of Chicago, moves this Court to enter Judgment as a Matter of Law in its favor pursuant to Federal Rule of Civil Procedure 50(b) or in the alternative grant a new trial pursuant to Federal Rule of Evidence 59(a).

Dated: April 15, 2011                                    Respectfully submitted,
                                                         **The City of Chicago**

                                                         s/Preston L. Pugh
                                                         One of Its Attorneys


Preston L. Pugh (ARDC No. 6243691)
Tiffany M. Ferguson (ARDC No. 6237051)
Jonathan B. Cifonelli (ARDC No. 6285930)
Rebecca D. Fuentes (ARDC No. 6289400)
Pugh, Jones, Johnson & Quandt, PC
180 North LaSalle Street, Suite 3400
Chicago, Illinois 60601
Telephone:  312-768-7800
Facsimile:  312-768-7801
Email: ppugh@pjjq.com
        tferguson@pjjq.com
        jcifonelli@pjjq.com
        rfuentes@pjjq.com

# CERTIFICATE OF SERVICE

I, Preston L. Pugh, an attorney, certify that I shall cause to be served a copy of **Defendant's Motion for Judgment as a Matter of Law or, In the Alternative, a New Trial** upon the following individual(s), by deposit in the U.S. Mail box at 180 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, same-day personal delivery by messenger, FedEx overnight delivery, facsimile transmitted from (312) 768-7801, or Case Management/Electronic Case Filing System ("CM/ECF"), as indicated below on April 15, 2011.

*Attorney for Plaintiff*

| | | |
|---|---|---|
| ☒ | CM/ECF | Arthur R. Ehrlich (Lead Attorney) |
| ☐ | Facsimile/___ Pages | Jonathan C. Goldman |
| ☐ | Federal Express | Goldman & Ehrlich |
| ☐ | U.S. Mail | 19 S. LaSalle Street, Suite 1500 |
| ☐ | Messenger | Chicago, IL 60603 |
| | | Phone: (312) 332-6733 |
| | | Fax: (312) 332-4629 |

s/Preston L. Pugh
Preston L. Pugh