IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS ALCAZAR-ANSELMO, | |
| Plaintiff, | Case No. 07 C 5246 |
| v. | |
| CITY OF CHICAGO, *et al.*, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) Defendant City of Chicago's (hereinafter, the "Defendant") Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial; (2) Plaintiff Gladys Alcazar-Anselmo's (hereinafter, the "Plaintiff") Motion for Prejudgment Interest, Liquidated Damages, and Post-Judgment Interest; and (3) Plaintiff's Attorneys' Fees Petition.

## I. BACKGROUND

This case involves Plaintiff's claim that Defendant violated the Family Medical Leave Act of 1993 (the "FMLA") by interfering with her rights to take medical leave as well as firing her in retaliation for requesting medical leave. The trial for this case began on March 14, 2011. At the close of Plaintiff's case, Defendant moved for judgment as a matter of law, arguing that Plaintiff did not present evidence that she was denied substantive FMLA rights or that she had a serious health

condition that would qualify her for FMLA leave. The Court denied this motion. The jury subsequently ruled in favor of Plaintiff on her retaliation claim and in favor of Defendant on the interference claim. These motions followed.

## II. ANALYSIS

### A. Defendant's Renewed Motion for Judgment as a Matter of Law or a New Trial

#### 1. Judgment as a Matter of Law

In ruling on Defendant's Rule 50(b) renewed motion for judgment as a matter of law, the Court determines "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable" to Plaintiff. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 207 F.3d 938, 941 (7th Cir. 2000). The Court assesses "whether no rational jury could have found for the plaintiff." *Id*.

Defendant argues that judgment as a matter of law is warranted because Plaintiff did not establish that she suffered from the requisite serious health condition. *See Kaufman v. Fed. Express Corp.*, 426 F.3d 880, 886–87 (7th Cir. 2005). A serious health condition under the FMLA is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical

care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611. Continuing treatment is defined as:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(the FMLA citation applicable to this case, as the cause of action accrued prior to the FMLA amendment on January 15, 2009). It is a question of law if an employee suffers from a serious health condition. *See Bell v. Jewel Food Store*, 83 F.Supp.2d 951, 958 (N.D. Ill. 2000).

Plaintiff was morbidly obese, which led to serious health issues. She underwent gastric bypass surgery on January 19, 2006, which resulted in her losing more than 150 pounds in one year. This rapid weight loss created excess skin that hung from Plaintiff's arms and abdomen. In his deposition read at trial, Dr. John Polley, the plastic surgeon who removed this skin, testified that the skin removal was medically necessary, as the excess skin could compromise the skin's integrity and lead to serious infections, rashes, and hygiene issues. Plaintiff first

- 3 -

met with Dr. Polley on February 1, 2007, yet waited until May 3, 2007, to have the surgery — an accommodation to both Dr. Polley's and Plaintiff's schedules. This delay does not show, however, that this excess skin was not problematic for Plaintiff. Defendant argues that the excess skin did not create an actual serious medical condition, but only the potential for such a condition to develop. FMLA leave is determined not by a potential serious condition, but rather the gravity of the condition at the time of the request for leave. *See Phillips v. Quebecor World RAI, Inc.*, No. 04-C-330, 2005 WL 6126702, at *6 (E.D. Wis. Aug. 16, 2005).

There does not appear to be a dispute that Plaintiff's gastric bypass surgery was medically necessary. Trial testimony via deposition from both Dr. Polley and Dr. James Madura, the doctor who performed Plaintiff's gastric bypass surgery, established that the continuing treatment from the gastric bypass could include a skin removal procedure. Plaintiff's skin did not tighten anywhere near to its original state after her extreme weight loss, which led to a condition that a person would not be reasonably expected to live with if a remedy exists. Such a remedy was the plastic surgery, which required Plaintiff to be incapacitated for more than three days. The Court already determined that the excess skin was a serious medical condition that qualified Plaintiff for FMLA leave. *See* Trial Tr. 548:2-4,

- 4 -

Mar. 16, 2011. It will not disturb this decision. Accordingly, Defendant's Renewed Motion is denied.

## *2. New Trial*

Defendant next argues that improper jury instructions created prejudice against it that necessitates a new trial. It argues that because the Court gave the jury a mixed-motive instruction on the retaliation claim, the failure to include an instruction with Defendant's affirmative defense that would eliminate its damages was a legal error that taints the jury's verdict. "A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003). One is warranted if Defendant can show that the allegedly improper jury instructions (1) inadequately stated the law and (2) "likely confused or misled the jury causing prejudice to [Defendant]." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374–75 (7th Cir. 2000).

The Court provided the following instruction that is the subject of Defendant's motion: "Plaintiff does not have to prove that Plaintiff's FMLA-protected activity is the only reason Defendant terminated her." Trial Tr. 940:25–941:2, Mar. 17, 2011.

As an initial matter, Defendant did not specifically object to the absence of an affirmative defense instruction in writing

or during the jury instruction conference that occurred on the record. Such an objection would have provided notice of the allegedly erroneous instruction, and eliminated the need for this motion and the potential for retrial. *See Chestnut v. Hall*, 284 F.3d 816, 819 (7th Cir. 2002). This failure, however, does not necessarily waive this argument as a ground for a new trial. Prior to the 2003 amendment to Federal Rule of Civil Procedure 51, Defendant's failure to raise this issue prior to the Court charging the jury with its instructions would have constituted a waiver. The Court is inclined to rule that Defendant has waived this argument, as Defendant knew — or should have known — of this potential flaw in the instructions before they were read to the jury. Defendant cannot keep an unused arrow in its quiver to use post-trial if the jury rules against it. However, during trial Defendant did raise objections to the instructions that were related to the argument it now makes. Rule 51(d)(2) allows for a limited, discretionary, and plain error review of jury instructions. *See Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006). As such, the Court will consider Defendant's objection to the instructions, and looks at them as a whole to "determine whether those instructions completely and accurately informed the jury of the relevant legal principles." *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, 488 F.3d 739, 751 (7th Cir. 2007).

Turning to Defendant's motion, the Court finds that a mixed-motive instruction was warranted on Plaintiff's retaliation claim. *See Goezler v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010). No pattern instructions exist in this circuit for FMLA cases. Proposed instructions exist, yet they do not address the issue before the Court, as they include a "but for" instruction on a retaliation claim. Proposed FMLA Pattern Jury Instructions, *http://www.ca7.uscourts.gov/Pattern_Jury_Instr/pattern_FMLA_jury_instr.pdf* (last visited July 14, 2011). Public comment on these instructions ended on June 30, 2008, before the holding in *Goelzer*.

The elements of an FMLA retaliation claim are the same as an ADA or Title VII retaliation claim. *See Burnett v. LFW, Inc.*, 472 F.3d 471, 481 n.5 (7th Cir. 2006). The Committee Comment for the pattern employment discrimination instructions includes a recommended instruction for a mixed motive case:

> Plaintiff must prove by a preponderance of the evidence that [her] [protected class] was a motivating factor in Defendant's decision to [adverse employment action] [her]. A motivating factor is something that contributed to Defendant's decision.
>
> If you find that Plaintiff has proved that [her] [protected class] contributed to Defendant's [adverse employment action] [her], you must then decide whether Defendant proved by a preponderance of the evidence that it would have [adverse employment action] [her] even if Plaintiff was not [protected class]. If so,

> you must enter a verdict for the Plaintiff but you may
> not award [her] damages.

*Seventh Circuit Civil Jury Instructions 3.01 Committee Comment c.*
This instruction is culled from *Gehring v. Case Corp.*, 43 F.3d
340, 344 (7th Cir. 1994).

The Court's failure to include this defense may have been
inconsistent with the recommended language for a mixed-motive
discrimination case, but nevertheless, the instructions informed
the jury of the legal principles it was to apply. Significantly,
Defendant had to present sufficient evidence to allow a mixed-
motive affirmative defense. *See Speedy v. Rexnord Corp.*, 243
F.3d 397, 402 (7th Cir. 2001). During trial, Defendant elicited
testimony from Norma Reyes ("Reyes"), Michael Tibbs ("Tibbs"),
Adrienne Hiegel ("Hiegel"), and Bernadette Williams ("Williams")
that Plaintiff's conduct gave Defendant grounds to fire her from
her position as a deputy commissioner in the Chicago Department
of Consumer Services. A gaping hole emerges in this testimony,
however, as to Defendant's mixed-motive defense.

Reyes worked as commissioner of the Department of Consumer
Services. She was in charge of employment decisions concerning
Plaintiff as her immediate supervisor. Reyes testified that
Plaintiff was qualified for her job, but that she was divisive
because she lacked interpersonal skills and did not respect
authority. *See, e.g.*, Trial Tr. 750:1–752:3, Mar. 16, 2011.

Reyes testified about numerous errors in judgment that Plaintiff made at during her job.  She did not testify, however, that she spoke with Plaintiff prior to firing her about taking any disciplinary actions against Plaintiff.  Granted, Reyes testified that she was not required to follow a disciplinary procedure prior to terminating Plaintiff.  However, Reyes firing Plaintiff for performance reasons without any informal procedure — or at least a conversation with Plaintiff about potential discipline — is illogical.  Plaintiff had significant responsibilities as a deputy commissioner, and according to much of the trial testimony she performed her job well.  Absent a serious professional or ethical violation by Plaintiff, or a sudden shift in Defendant's budget that required quick and decisive personnel decisions, her sudden termination immediately prior to her requested medical leave is suspicious.

Reyes testified that she considered firing Plaintiff after an incident in which Plaintiff allegedly undermined Reyes's authority. *Id.* at 773:1–13.  However, she did not say that she communicated this sentiment to Plaintiff.  Such a line of testimony occurs again in regard to an alleged failure in a taxi medallion renewal program that Plaintiff managed, in which Reyes said that she thought about firing Plaintiff but did not communicate this to her.  *Id.* at 781:18–782:7.  This same scenario was repeated with an e-mail that Plaintiff sent about

the planned office for the Maxwell Street Market, as well as an exchange at a senior staff meeting, which Reyes contends prompted her to fire Plaintiff. *Id*. at 792:24–796:5.

At trial, Reyes alluded to two conversations she had with Plaintiff in which she communicated problems she had with Plaintiff's job performance. Reyes, however, did not testify that she told Plaintiff that these problems created grounds for discipline or termination. *Id*. at 799:24–800:5. According to the trial testimony, Reyes never put Plaintiff on notice of any potential disciplinary action. On cross-examination, Reyes stated that she did not give Plaintiff any form of written reprimand because she was not required to do so. *Id*. at 827:12–828:1. When Reyes talked to Plaintiff about her allegedly substandard job performance, however, she was simply fulfilling her responsibility as the supervisor of the department. There is nothing unusual about an employee not fulfilling the high expectations of a manager. This does not automatically create grounds for losing one's job. The failure to give the affirmative defense instruction was harmless, as the evidence did not support this instruction, and it supported the jury's verdict in the absence of this instruction. *See Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999).

Defendant also objects to the following instruction: "If you disbelieve the reasons Defendant has given for its decision,

you may infer Defendant terminated Plaintiff because of her FMLA-protected activity."   Trial Tr. 941:3-6, Mar. 17, 2011. Defendant objects to this "permissive pretext instruction" being given.   The instruction, however, correctly states the law. *See Gehring*, 43 F.3d at 343.   It may not have been necessary or the best possible instruction for this case, but it did not confuse or mislead the jury, or prejudice Defendant.   It does not provide grounds for a new trial.   Accordingly, Defendant's Motion for a new trial is denied.

### B.    Plaintiff's Motion for Prejudgment Interest, Liquidated Damages, and Post Judgment Interest

The next issue involves Plaintiff's proper damages.   The jury awarded Plaintiff $75,000 in compensatory damages.   The FMLA provides that Plaintiff is entitled to interest on this.   29 U.S.C. § 2617(a)(1)(A)(ii).   The Court has discretion to award this interest, and it is the norm in federal litigation to award compound prejudgment interest. *See Rasic v. City of Northlake*, No. 08-C-104, 2010 WL 3365918, at *11 (N.D. Ill. Aug. 24, 2010). To fully compensate Plaintiff, the Court will not deviate from the norm, and compounds the interest on a monthly basis. *See id*. at *12.   This interest will be calculated from April 27, 2007, the date on which Plaintiff was fired, until March 18, 2011, the date when judgment was entered. *See Am. Nat'l Fire Ins. Co. ex*

*rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 939 (7th Cir. 2003).

The federal prime rate was 8.05 percent in 2007, 5.09 percent in 2008, and 3.25 percent in 2009 through the date of judgment. Plaintiff performed an interest calculation, but erred by extending the accrued interest through the entire month of March 2011. The Court has performed this calculation, and finds that the proper interest on the compensatory damages is $14,476.17.

The FMLA also provides that Defendant is liable to Plaintiff for liquidated damages of $89,476.17 — the compensatory damages plus accrued prejudgment interest. 29 U.S.C. § 2617(a)(1)(A)(iii). The Court can deny this award if it finds that Defendant's FMLA violation was "in good faith" and that Defendant "had reasonable grounds for believing that the act" did not violate the FMLA. *Id*. The Defendant, however, "bears a substantial burden in showing that it acted reasonably and with good faith." *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995)(analyzing the analogous liquidated damages provision in the Fair Labor Standards Act). Here, Defendant has failed to meet this burden. As discussed above, Reyes' testimony did not establish a sufficient link between Plaintiff's alleged poor work performance and her termination. Rather, the fact that Plaintiff was fired so close to her requested FMLA leave date

provided grounds for the jury to rule for Plaintiff on her retaliation claim. Accordingly, Defendant is liable to Plaintiff for $89.476.17 in liquidated damages.

Plaintiff's compensatory damages, prejudgment interest, and liquidated damages add up to $178,952.34. Defendant is also liable to Plaintiff for post-judgment interest on this amount at a rate of 0.252 percent, as provided by 28 U.S.C. § 1961.

### C. Plaintiff's Attorneys' Fees Petition

The final post-trial motion involves Plaintiff's attorneys' fees and costs provided for in the FMLA. 29 U.S.C. § 2617(a)(3). Plaintiff seeks a total of $381,029.05 in attorneys' fees and costs. The Court starts its attorneys' fees calculation by determining the "loadstar" amount — the number of hours expended by a reasonable hourly rate. *See Fritcher v. Health Care Servs. Corp.*, 301 F.3d 811, 819 (7th Cir. 2002). A reasonable fee is determined by the facts of the case, using 12 factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983). The Court will address the separate requests Plaintiff makes.

### 1. Arthur Ehrlich Attorneys' Fees

Plaintiff's lead counsel, Arthur Ehrlich ("Ehrlich"), and his law clerk claim to have worked 871.88 hours on this case. As an initial matter, the $2,075.00 that Plaintiff seeks for the 41.5 hours that Ehrlich's law clerk worked on this case is not recoverable. Plaintiff should bear this cost. Second, Plaintiff has filed an amended fee petition, which asks for reimbursement of 13.5 hours of additional time Ehrlich spent on this case. Of this time, 12.5 of these hours were spent reviewing Defendant's response to this fee petition and preparing Plaintiff's reply. These 12.5 hours are not recoverable, as allowing this would encourage protracted battles for attorneys' fees. In addition, Plaintiff's petition includes 24.28 hours of work that Ehrlich spent on the initial fees. (This is an estimate of the time Ehrlich worked on this petition, as some of these hours have been lumped in the bill with work on other motions. Because the Court cannot determine which portion of this time was spent on the fees petition, it counts all of these hours toward this issue.) Again, making Defendant liable for these hours could encourage protracted fees disputes. If a prevailing attorney could recover

fees for all of the work on a fees petition, he could be motivated to pile on the hours for a petition. The Court has discretion, and uses it, to deny this fee request for proving fees. *See Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir. 1982).

With these hours removed from the petition, the Court finds, over Defendant's objection, that Ehrlich's itemized bill reflects a reasonable number of hours for the work involved in this litigation. The proceedings over the last four years included extensive discovery, a settlement conference, preparation for a trial date in 2009 that did not occur because of Defendant's request for additional discovery, cross-motions for summary judgment, and preparations for and presiding over the March 2011 trial. Accordingly, the Court bases its attorneys' fees award on 793.6 hours that Ehrlich worked on this case.

Next, Ehrlich asks for $400 per hour. Ehrlich has been a licensed attorney for more than 25 years, during which time he has represented plaintiffs in federal court. Prior to 2011, he billed $350 per hour, but he states that he set a $400 hourly rate for this case because he took it on contingency. Ehrlich's customary rate of $350 per hour would be more reasonable in this case, as the risk that he took in representing Plaintiff does not warrant a 14.3 percent increase in his hourly rate. As such, the lodestar amount for Ehrlich is $277,760.00.

Defendant argues that because Plaintiff was successful on only one of her two claims, as well as received less than 20 percent of the monetary relief she sought, the lodestar figure should be reduced significantly. Because of Plaintiff's partial success, the Court "'may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)(quoting *Hensley*, 461 U.S. at 436–37). The Court has discretion to determine if the lodestar figure represents an excessive amount, but it must exercise this discretion within the framework of *Hensley*. *Id*. at 437.

The work involved in representing Plaintiff on the retaliation and interference claims was substantially related, and cannot be itemized separately with any particularity. In fact, only one of the line items in Ehrlich's statement — the entry for 4.67 hours on May 5, 2011 — mentions whether the work was performed for the retaliation or interference claim. Of course, because this designation does not appear on the statement does not mean that Ehrlich did not devote significant hours to each cause of action separately. The Court, however, does not expect such an exact itemization of Ehrlich's time.

Despite the fact that Plaintiff's retaliation and interference claims are inextricably intertwined, her success on only the retaliation claim warrants a reduction in recoverable

fees. *See Roseboro v. Billington*, 618 F.Supp.2d 85, 89 (D.D.C. 2009). The Court finds that a 25 percent reduction is proper. Plaintiff's failure on one claim is the primary factor in this decision. The attorneys' fees would have been substantially the same, however, if Plaintiff had pursued only the retaliation or interference claim. A 50 percent reduction would be too severe, and such "claim counting" is improper. See *Sottoriva*, 617 F.3d at 976. Further, the Court is allowing Ehrlich to recover for time spent in responding to Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim, which Judge Wayne Anderson dismissed. Accordingly, the Court awards Plaintiff $208,320.00 for Ehrlich's attorneys' fees.

### 2. *Elliot Richardson and Kevin Keeley Attorneys' Fees*

Elliot Richardson ("Richardson") served as Plaintiff's co-counsel for trial. He has been a licensed attorney since 1998, and has represented plaintiffs in federal civil rights cases since 2000. He claims to have worked 79.48 hours on this case, and seeks $350 per hour. He states that his usual hourly rate ranges between $300 and $350 per hour, but that the higher rate is appropriate here because he too took this case on contingency. For the reasons set forth above in the analysis of Ehrlich's fees, the higher hourly rate is not reasonable. Also, Richardson has about 15 years less experience than Ehrlich in federal litigation. As such, a $300 per hour rate is reasonable, making

the lodestar figure for Richardson $23,844.00.  Richardson's fees are also reduced by 25 percent due to Plaintiff's partial success, so Plaintiff is awarded $17,883.00 for Richardson's attorneys' fees.

Plaintiff also seeks fees for Richardson's legal assistant, Jessica Botello ("Botello").  All of the 39.5 hours that Botello worked, however, appear to be clerical, and are not recoverable.  *See Firestine v. Parkview Health Sys., Inc.*, 374 F.Supp.2d 658, 667 (N.D. Ind. 2005).  Examples of her work include:  "Printed and organized all deposition transcripts" (12/27/2010); "Prepared documents for attorney review" (3/4/2011); "Prepared exhibits and exhibit binders" (3/8/2011); "Prepared documents and materials for trial; and Made deliveries to court" (3/16/2011).  The only entries that come close to resembling allowable fees are those for editing motions and preparing exhibits.  This work, however, when considering Richardson's affidavit, appears to be clerical as well.

Finally, Plaintiff seeks fees for 65.7 hours of work that Kevin Keeley ("Keeley") devoted to her case.  Keeley is a recent law school graduate who has been a licensed Illinois attorney since November 2010.  He seeks $175 an hour for work that included drafting and responding to motions in limine, as well as preparing for and assisting at trial.  Keeley states in his affidavit that he charges between $150 and $225 per hour for his

services.  The Court finds that the $150 rate is reasonable, making his lodestar figure $9,855.00.  For the reasons stated above, this is reduced by 25 percent, giving Plaintiff $7,391.25 for Keeley's attorneys' fees.

### 3. *Plaintiff's Costs*

The FMLA allows a prevailing plaintiff to recover the reasonable costs of her case.  29 U.S.C. § 2617(a)(3).  Federal Rule of Civil Procedure 54(d) "creates a presumption in favor of awarding costs."  *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Illinois*, 717 F.2d 385, 390 (7th Cir. 1983).  The costs allowed in an FMLA case include essentially all the same taxable items for a bill of costs set forth in 28 U.S.C. § 1920.  *See Vaccaro v. Custom Sounds, Inc.*, No. 3:08-CV-776, 2010 WL 1223907, at *6 (M.D. Fla. Mar. 4, 2010)(awarding costs under the Fair Labor Standards Act using a similar analysis to that used in a motion under 28 U.S.C. § 1920).  The Court must determine if the claimed costs are reasonable and necessary.  *See Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995).

### a. *Deposition Transcripts and Court Reporter Fees*

Plaintiff seeks to recover $5,885.03 in deposition transcript and court reporter attendance fees.  If a prevailing party obtains a transcript for a use necessary in a case, it may

recover the full cost of the transcript as long as the cost does not exceed the regular copy rate established by the Judicial Conference of the United States at the time of the deposition. *N.D. Ill. R. 54.1(b).* The maximum rate allowed at the time of the depositions in this case was $3.65 per page. *See, Maximum Transcript Rates, http://www.ilnd.uscourts.gov/CLERKS_OFFICE/CrtReporter/trnscrpt.htm* (last visited July 14, 2011). A number of the invoices for deposition transcripts do not include the number of pages in the transcript. As such, they are insufficiently documented to be taxable, as the Court cannot determine if they comply with the maximum page rate. These are: Samantha Olson (9/23/2009); Eric Robinson (9/30/2009); Isabel Esparza (5/14/2009); Richard Anselmo (9/5/2008); Gladys Alcazar-Anselmo (7/25/2008); Fernando Striedinger (10/7/2008); and John Polley (9/11/2008). The other transcripts are taxable as they are properly documented and have allowable page rates. Plaintiff also seeks to recover shipping and e-mail delivery charges for these reports, which are unrecoverable ordinary business expenses, and will be deducted from Plaintiff's recovery. *See Menasha Corp. v. News Am. Mktg. Instore, Inc.*, No. 00-C-1895, 2003 WL 21788989, at *3 (N.D. Ill. July 31, 2003). Accordingly, Plaintiff can recover $1,471.00 in deposition transcript costs.

Plaintiff is also entitled to court reporter deposition attendance fees as long as they are sufficiently documented and reasonable. *See id.* at *2 (finding a $60 hourly rate reasonable). All of the court reporter attendance fees are properly documented except for that of Isabel Esparza's deposition on September 9, 2008, as this invoice does not include how long the deposition lasted. This cost is not recoverable. The fees are also reasonable except for the two-hour overtime charge for the August 27, 2008, Norma Reyes deposition. The deposition appears to have lasted six hours. Plaintiff provides no explanation as to why two of these hours are billed as overtime. Accordingly, recovery for the two overtime hours will be reduced to $62.50 per hour, the regular fee for the court reporter. In sum, Plaintiff can recover $1,031.25 in court reporter attendance costs.

### b. Document and Other Costs

Plaintiff seeks $2,294.64 for copies and trial binders. The prevailing party may tax as costs copies of materials necessarily obtained for use in a case. 28 U.S.C. § 1920(4). The Court finds that the costs sought for the trial exhibit binders and color copies of the photos from Dr. Polley are properly documented. The copy costs, however, are not. While Plaintiff does not need to provide a description of the copying "so detailed as to make it impossible economically to recover" these

costs, she must provide a sufficient breakdown of the copying. *See Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). She fails to do this, but rather states only that these were copy charges. As such, they are not recoverable. Plaintiff's recovery for document costs is thus reduced to $560.34.

Two other costs remain. First, Plaintiff seeks witness fees for two deposition and one trial subpoena. Pursuant to 28 U.S.C. § 1821(b), a witness shall be paid $40 for each day attending a trial or deposition, as well as the costs to travel to and from the courthouse or deposition. The travel fees that Plaintiff seeks for these witnesses are not properly documented. Therefore, Plaintiff can recover only $120.00 for these three witness fees. Second, Plaintiff seeks $369.72 in Westlaw fees that were incurred outside of Ehrlich's research plan. The Court grants these, as such online research fees are recoverable in a motion for attorneys' fees. *See Rasic*, 2010 WL 3365918, at *11.

Plaintiff can recover a total of $3,553.21 in costs. In sum, she can recover $237,097.46 in attorneys' fees and costs.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1. Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, a New Trial is denied.

2.    Plaintiff's Motion for Prejudgment Interest, Liquidated Damages, and Post-Judgment Interest is granted.

3.    Plaintiff's Petition for Attorneys' Fees and Costs is granted in part and denied in part.  Defendant is liable to Plaintiff for $178,952.34 in compensatory damages, prejudgment interest, and liquidated damages, as well as post-judgment interest on this amount at a rate of 0.252 percent.  Defendant is also liable to Plaintiff for $237,097.46 in attorneys' fees and costs.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 7/27/2011